773 P.2d 1147

Isaac BONAPARTE, Plaintiff–Appellant,

v.

Steve A. NEFF and Rickie L. Neff, husband and wife,
Defendants–Respondents,

and

Dennis R. Ulery and Carol M. Ulery, husband and wife, Third Party Defendants–Respondents.

No. 17247.

Court of Appeals of Idaho.

May 3, 1989.

Danny J. Radakovich, Lewiston, for plaintiff-appellant.

Loren J. Eddy of Ware, O'Connell & Creason, Lewiston, for defendants-respondents, Steve and Rickie Neff.

Dale O. Cox, Orofino for third party defendants-respondents, Dennis and Carol Ulery.

SWANSTROM, Judge.

Isaac Bonaparte appeals from two judgments granting costs and attorney fees in favor of Steve and Rickie Neff and Dennis and Carol Ulery. This Court vacates both awards and remands the case for further proceedings.

Bonaparte filed an action to quiet his alleged title to a roadway easement across property owned by the Neffs. The Neffs answered Bonaparte's complaint and in turn filed a third-party complaint against the Ulerys, from whom the Neffs had purchased their property. The action went to trial before District Judge John Maynard. At the close of Bonaparte's case, the Neffs moved for involuntary dismissal pursuant to I.R.C.P. 41(b). This motion was granted. As a consequence, the judge also dismissed the Neffs' third-party complaint against the Ulerys. Apparently, Judge Maynard instructed the Neffs to submit an affidavit

of their costs and attorney fees.[1] The Neffs filed a memorandum of costs and fees. So did the Ulerys. Bonaparte moved to disallow both. However, before the dispute over fees and costs was resolved, Judge Maynard's term of office expired.

The case was reassigned to District Judge Ronald Schilling, who held a hearing to determine the parties' entitlement to their claimed attorney fees and costs. As prevailing defendants, the Neffs argued that they were entitled to have their fees paid by plaintiff Bonaparte. The Ulerys, as third-party defendants, argued that they were brought into the case by the Neffs, who should be ordered to pay their fees. After listening to argument by counsel and reviewing the court file, Judge Schilling found that Bonaparte's action "was pursued unreasonably and without foundation." The judge ordered Bonaparte to pay the costs and attorney fees, not only of the defendants Neff, but also of third-party defendants, Ulery. Separate judgments were entered. This appeal followed.

Necessarily, this opinion deals separately with each award. Chief Judge Walters and Judge Burnett concur in the first part of this opinion dealing with the award of fees to the Neffs. However, they do not share my views regarding the award of fees to the Ulerys. As to this award, I set forth my views in the second part of this opinion while Judge Burnett writes separately to express the view he and Chief Judge Walters hold.

## AWARD OF FEES TO DEFENDANTS, NEFF

Bonaparte contends that Judge Schilling erred, as a matter of law, in making his determination without the benefit of a trial transcript. Bonaparte also contends that Judge Schilling, in making the awards, gave undue importance to Judge Maynard's dismissal of Bonaparte's claim at the conclusion of plaintiff's case and to Judge Maynard's apparent instruction that the Neffs submit an affidavit of attorney fees.

Initially we note that an award of fees to a prevailing party in this type of case is a matter of discretion of the trial court under I.C. § 12–121. Such a discretionary award can be made "by the court only when it finds, from the facts presented to it, that the case was brought, pursued or defended frivolously, unreasonably or without foundation." I.R.C.P. 54(e)(1). The party claiming entitlement to fees under I.C. § 12–121 must show that this criterion is met.

In our appellate review of the exercise of discretion, we conduct the following inquiry: (1) whether the lower court rightly perceived the issue as one of discretion; (2) whether the court acted within the boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason. *Associates Northwest v. Beets*, 112 Idaho 603, 733 P.2d 824 (Ct.App.1987).

Here, we may narrow our focus to whether Judge Schilling acted within the boundaries of his discretion and whether he misperceived or ignored any applicable legal standards. Due to Bonaparte's contention that Judge Schilling erred as a matter of law by deciding to award fees under I.C. § 12–121 without reviewing a transcript of the trial, we must initially decide whether sufficient facts were presented to Judge Schilling upon which he could determine that the action had been "pursued unreasonably" or "without foundation."

The record on appeal fails to disclose precisely what documents Judge Schilling reviewed. As the appellant, Bonaparte requested only a limited record be prepared for this appeal. We know Judge Schilling examined the entire district court file, but that a trial transcript was not prepared. It is apparent that he considered the various legal theories advanced by Bonaparte and the extent of discovery undertaken by the

---

1. In the transcript of subsequent proceedings before Judge Schilling, the judge makes reference to an "order" in which Judge Maynard directed the Neffs to submit an affidavit for attorney fees. The record on appeal does not include the order, court minutes or any transcript of proceedings before Judge Maynard.

parties. We can also assume that Judge Schilling had court minutes of the trial and other documents including depositions which have not been provided to us on appeal.

■ We are not persuaded that it was error, per se, for Judge Schilling to decide the attorney fee issue, on grounds that the action "was pursued unreasonably and without foundation," without reviewing a transcript or recording of the trial testimony. No authority has been cited to us in support of Bonaparte's argument. We have been unable to locate any court decision adopting a "bright line" rule which would prohibit any successor judge from making a discretionary ruling on attorney fees without having a trial transcript or similar record to review. We believe that the need for a transcript should be determined on a case-by-case basis. The failure of the appellant to give us the complete record upon which Judge Schilling relied precludes our further examination into this alleged error.

■ Bonaparte's other arguments concern the standards applicable to Judge Schilling's ruling. One such standard governing the judge's discretion is that an action is not frivolous, unreasonable or without foundation solely because it fails to survive a defendant's I.R.C.P. 41(b) motion for involuntary dismissal. The ultimate failure as a matter of law of the plaintiff's case does not necessarily mean that the action was frivolous or without merit. *Gulf Chemical Employees Federal Credit Union v. Williams*, 107 Idaho 890, 693 P.2d 1092 (Ct.App.1984) (reversing attorney fee award to defendant who had been granted summary judgment). The court, in a case presenting mixed issues of law and fact, must determine whether the evidence adduced is sufficient to establish a fairly debatable issue under the legal theories advanced by the plaintiffs or whether the position advanced was plainly fallacious. *French v. Sorensen*, 113 Idaho 950, 751 P.2d 98 (1988); *Associates Northwest v. Beets, supra.*

■■ We believe the appellate record does raise questions about the basis for Judge Schilling's award. Apparently, Judge Schilling concluded, from the grant of the defendant's Rule 41(b) motion, that Bonaparte had failed to present even a prima facie case for the claimed easement by prescription. That conclusion may be true. We are in no position to challenge it where the appellant has not furnished us with the same record that was before Judge Schilling. On the other hand, we note that a plaintiff may present a fairly debatable prima facie case and still suffer dismissal under I.R.C.P. 41(b) in a non-jury trial. *See Sorenson v. Adams*, 98 Idaho 708, 571 P.2d 769 (1977) (overruled on other grounds, *Owen v. Boydstun*, 102 Idaho 31, 624 P.2d 413 (1981)). Our concern here is that Judge Schilling may have equated the grant of the Rule 41(b) motion by Judge Maynard with a determination that the action was "frivolous, unreasonable or without foundation." The record on appeal suggests that Judge Schilling relied heavily on the fact that the Rule 41(b) motion was granted by Judge Maynard. Yet it is clear that Judge Maynard did not make any findings as is required by Rule 41(b) or 52(a), I.R.C.P. *See Powers v. Tiegs*, 108 Idaho 4, 696 P.2d 855 (1985). This absence of required findings by Judge Maynard increases our concern about the reliance Judge Schilling apparently placed upon the order of dismissal. Accordingly, we deem it necessary to vacate the award of fees to the Neffs and remand the case for reconsideration of the basis for such an award.

■ We now turn to Bonaparte's contention that Judge Schilling also improperly relied upon Judge Maynard's instruction that the Neffs submit an affidavit for their costs and fees. The Neffs, in support of their award, argue that this directive was an implicit "finding" that Bonaparte's action was brought or pursued unreasonably or without foundation. We disagree. No such finding can be inferred. Moreover, Rule 54(e)(2) requires "a written finding ... [stating] the basis and reasons for awarding ... attorney fees [under I.C. § 12–121]." The Neffs have not pointed to anything in the record of the trial court that would satisfy this rule. Again, it is

clear that no such findings were made by Judge Maynard.[2]

We are faced again with the problem presented with Judge Schilling's consideration of the Rule 41(b) motion. Although it is clear that Judge Schilling considered the available record in making his own findings regarding the foundation and reasonableness of the issues advanced by Bonaparte, it is unclear whether Judge Schilling unduly relied on Judge Maynard's instruction to the Neffs to submit an affidavit for their costs and fees. Because we believe that little or no reliance should be placed on Judge Maynard's unexplained request for the submission of an affidavit for fees, on remand this possible basis for the award also needs to be re-examined.

For the foregoing reasons, we vacate the Neffs' judgment for fees against Bonaparte and remand for further proceedings consistent with this part of the opinion. No costs or fees are awarded on appeal.

WALTERS, C.J., and BURNETT, J., concur.

## THE AWARD OF COSTS AND FEES TO THIRD–PARTY DEFENDANTS, ULERY

As noted earlier, the views expressed here are solely those of the author. The views of Chief Judge Walters and Judge Burnett are explained in a separate opinion.

The same circumstances which caused this Court to vacate the award of fees to the Neffs also underlie the award of fees to the Ulerys. Accordingly, while I could agree with my colleagues that the judgment awarding fees to the Ulerys must be vacated, ultimately I could not agree to any award of fees being made to the Ulerys against Bonaparte under the procedural facts of this case. My reasons are as follows.

Only the Neffs were named as defendants in Bonaparte's complaint to establish his right to an easement. After the Neffs unsuccessfully sought to have their predecessors in interest, the Ulerys, defend the action, the Neffs filed a third-party complaint against the Ulerys, alleging breach of warranties, misrepresentation and seeking indemnification for damages, costs and expenses of defending against Bonaparte's claim. The Ulerys answered the Neffs' third-party complaint, seeking its dismissal and requesting that the Neffs pay the Ulerys' costs and attorney fees. The Ulerys never pleaded any claims against Bonaparte.

At the hearing before Judge Schilling, the Ulerys' attorney made it clear that they were looking to the Neffs for their costs and attorney fees. The Ulerys argued that, in filing the third-party complaint, the Neffs precipitously and "unnecessarily brought the Ulerys into the case." The judge stated that he was not prepared to rule on the Ulerys' claim for fees against the Neffs. He noted that the issues raised by the Neffs' third-party complaint were never addressed in the trial due to Judge Maynard's dismissal of this complaint after granting the Neffs' motion for dismissal of Bonaparte's action. Judge Schilling therefore requested briefing from the Neffs and the Ulerys before ruling on the Ulerys' request for an award of fees against the Neffs.

Judge Schilling nevertheless proceeded to award attorney fees to the Ulerys directly against Bonaparte. His written order stated:

> Furthermore, I find that third-party defendants Ulerys are entitled to attorney fees from plaintiff Bonaparte in that it was certainly predictable and foreseeable that the defendants Neff would join their predecessors in interest in defense

---

**2.** After making his own finding that the action had been pursued unreasonably and without foundation, Judge Schilling noted that Judge Maynard must have "concurred in this assessment in that there seems to be no other logical reason for his requesting submission of attorney fees incurred by defendants Neff." We note, however, that it is not uncommon for a court to state its decision on the merits of a controversy without mentioning costs or attorney fees. Upon inquiry by the prevailing party about whether he will be entitled to attorney fees, the court sometimes simply will direct him to submit an affidavit so that the claim for fees can be properly presented and later decided. I.R.C.P. 54(e)(5), (6) and (7).

of the quiet title action brought against them especially where, as here, any prescriptive use by the plaintiff took place prior to the time defendants Neff became owners of the property. I will therefore order that a judgment be entered in favor of third-party defendants Ulery and against plaintiff Bonaparte ... for attorney fees and costs in the amount of $2,024.00.

The Neffs' third-party action against the Ulerys, essentially one for breach of warranty and indemnity, became moot when Bonaparte's action for an easement was dismissed. As previously noted, the Ulerys' pleadings did not seek any relief against Bonaparte. Likewise, Bonaparte never amended his complaint to seek any relief against the Ulerys after they were brought into the action by the Neffs. Thus, while either the plaintiff or the third-party defendants could have chosen to assert claims against the other, neither elected to do so. *See* 6 C. WRIGHT AND A. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL §§ 1458, 1459 (hereinafter WRIGHT & MILLER). In such circumstance the plaintiff and the third-party defendant are not considered to be "opposing" or "adverse" parties. *Id.*

The Neffs' third-party action against the Ulerys was of no concern to Bonaparte. The Neffs' third-party action was based on warranties in the deed they had received from the Ulerys. The fact that the Ulerys might be found liable to the Neffs for breach of warranty if Bonaparte established his claim of an easement in no way provided the Neffs with a defense against the claimed easement. The joining of the Neffs' breach of warranty claims against the Ulerys with the main action was a matter of convenience, not of necessity. A party may refrain from impleading a third-party defendant in favor of asserting his claim in an independent action. WRIGHT & MILLER § 1442; *Tejas Development Co. v. McGough Bros.,* 167 F.2d 268, 269 (5th Cir.1948).

Thus, ... the courts have held that the defendant who voluntarily brings a third party action for indemnity must bear the cost if the third party prevails, and cannot look to the plaintiff for reimbursement.

*Andersen v. Gold Seal Vineyards, Inc.,* 81 Wash.2d 863, 505 P.2d 790, 795 (1973).

In similar situations where a statute allows an award of fees to a prevailing party, it has been held that the plaintiffs were liable for costs relating to their controversy with defendant and the defendant was liable for costs relating to the third-party controversy. *Tejas Development Co. v. McGough Bros., supra.* If the Neffs, who elected to bring the third-party action against the Ulerys, could not recover fees from Bonaparte for bringing that action, it would make little sense to say that the Ulerys can nevertheless recover their fees from Bonaparte. Even if Bonaparte's claim of easement was pursued "unreasonably and without foundation" against the Neffs, as found by Judge Schilling, it was never pursued at all against the Ulerys. The Ulerys recognized this at the hearing regarding fees when they argued that the Neffs should pay their fees; that the Neffs "didn't need to protect themselves by suing the Ulerys [prematurely]."

In arguments respondents' counsel made to the district court there is the suggestion that Bonaparte should have learned—through the discovery which the parties conducted—that he would not prevail at trial on his claims for an easement. Indeed, Judge Schilling may have read the depositions and may have correctly perceived that the depositions exposed weaknesses or defects in Bonaparte's claims and that Bonaparte should have more carefully investigated the facts or researched the law before pursuing his quiet title action against the Neffs. I have no problem with this reasoning. The same reasoning, however, ought to be applied in respect to the Neffs' third-party action against the Ulerys. If it was so obvious to all concerned that Bonaparte's claims against Neff lacked any basis in fact or law, then what does this say about the basis for Neffs' third-party action against the Ulerys? In reality, if there was no basis for Bonaparte's claims, there could be no greater

basis for the third-party claims. This is but another aspect of the "factual nexus" argument which the majority uses to show that Bonaparte and Ulery are "factually adverse" parties. It was the Neffs, of course, who made the Ulerys *legal* adversaries. Being factually adverse to Bonaparte cost the Ulerys nothing. Only when the Neffs chose to make the Ulerys adverse *parties* rather than simply use them as defense witnesses at trial, did the Ulerys incur the litigation costs which they now want Bonaparte to pay.

Part of the problem I have with awarding these fees against Bonaparte lies with the interpretation given I.R.C.P. 54(e)(1). This rule does convey broad discretion to the trial judge in awarding fees to a prevailing party but until now it has not been clear just how broad this discretion is. The rule gives little, if any, indication to claimant A that if he sues B in an action which is later held to be without foundation, he will also have to pay C's fees if B forces C into the suit with a third-party complaint, regardless of the fact that A pursued no claims against C and C pled for no relief against A. The effect is that A is held to have pursued an action unreasonably or without foundation against C when in fact he pursued no action at all against C. This interpretation of Rule 54(e)(1) may be the proper one but until now it has certainly not been the obvious one.

In an unanimous opinion just released by this Court we said:

> *before* the case is decided, it matters a great deal to each party whether, and to whom, a fee may be awarded. This is especially true in cases where the amount of a potential award is likely to be substantial in relation to the amount at stake in the litigation. In such cases, the burden of attorney fees will profoundly affect the choice of whether to file or defend a law suit. . . .

*Swanson v. Henning*, 116 Idaho 199, 203, 774 P.2d 909, 913 (Ct.App.1989).

On the procedural facts of this case, I conclude that the district court should not have awarded fees to the Ulerys against Bonaparte. I would reverse this judgment. It is not my intent to establish any rigid rule disfavoring third-party litigants or chilling third-party practice. I merely recognize—as do the authorities cited in this opinion—that not all attempts to force potential parties into the trial arena at one time promote judicial economy or assist the fact finder in focusing on the controlling issue.

BURNETT, Judge (joined by WALTERS, Chief Judge), specially concurring.

We concur in the first part of Judge Swanstrom's lead opinion, which vacates the award of attorney fees in favor of the defendants (Neff) and against the plaintiff (Bonaparte). We also concur in the result reached by the second part of the lead opinion, which vacates an award of the third-party defendants' (Ulerys') costs and attorney fees directly against the plaintiff. However, we respectfully disagree with our colleague's announcement that he would disallow any such award and, therefore, would favor reversing on this issue rather than remanding for the trial court to exercise its discretion.

In a case like this one, where multiple parties, claims and issues are involved, I.R.C.P. 54(d)(1)(B) vests in the trial court a discretionary power to allocate costs "in a fair and equitable manner." *See Jones v. Whiteley*, 112 Idaho 886, 736 P.2d 1340 (Ct.App.1987). The trial court possesses similar discretion to allocate attorney fees under Rule 54(e)—subject, of course, to a requirement that the court find that a nonprevailing party has brought, pursued or defended a claim frivolously, unreasonably or without foundation, if the award is made under I.C. § 12–121. *Anderson v. Ethington*, 103 Idaho 658, 651 P.2d 923 (1982). In the present case, it is within the discretionary authority of the trial court to fashion a just allocation of costs and attorney fees among the nonprevailing plaintiff, the prevailing defendants and the prevailing third-party defendants.

Although today's lead opinion acknowledges such discretion in theory, it leaves no

room for discretion in practice. Reversal precludes discretion. The lead opinion suggests that reversal is warranted by the "procedural facts of this case." But there are no unique "procedural facts" here. The alignment of parties and the relationships among claims are typical of third-party practice. The reasons given by the lead opinion for reversal in this case have the potential to become rules supplanting discretion in a wide variety of third-party lawsuits. We decline to adopt them.

■■■ The lead opinion suggests that a nonprevailing plaintiff should not be required to bear, directly or indirectly, any part of the prevailing third-party's costs or attorney fees because these parties are not "adverse" to each other. In the present case, this characterization is accurate only in the narrow sense that the plaintiffs and third-party defendants did not plead specific claims directly against each other. However, adversity is not to be determined by a formalistic view of the pleadings; it is to be determined in a functional sense by examining the practical effect of the positions taken by the parties. A third-party defendant is "factually adverse" to a plaintiff when the plaintiff's claim could lead to the third-party defendant being subjected to indemnity or contribution. *Wiggins v. City of Philadelphia*, 216 F.Supp. 241 (E.D.Pa. 1963), *aff'd*, 331 F.2d 521 (3rd Cir.1964), cited with apparent approval in 6 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1459, at 317–18 (1971) (hereinafter cited as WRIGHT & MILLER). "[T]hird-party practice clearly recognizes that third-party defendants are in an adverse position to the party asserting a claim for which they may be ultimately responsible." *Pioneer Roofing Co. v. Mardian Construction Co.*, 152 Ariz. 455, 466, 733 P.2d 652, 663 (Ct.App. 1986); *Nationwide Resources Corp. v. Ngai*, 129 Ariz. 226, 630 P.2d 49 (Ct.App. 1981).

■■■ Adversity in a functional sense is readily apparent where a plaintiff's claim against a defendant shares a factual nexus with the defendant's claim for indemnity against a third-party defendant. This is such a case. As quoted in the lead opinion, the trial judge has found

> that it certainly was predictable and foreseeable that the defendants Neff would join their predecessor in interest in defense of the quiet title action brought against them especially where, as here, any prescriptive use by the plaintiff took place prior to the time defendants Neff became owners of the property.

Thus, the judge has determined that the plaintiff's quiet title action shares a factual nexus with the third-party action. Although the threshold legal dispute in this case is between plaintiff Bonaparte and defendants Neff, the underlying factual dispute has pitted Bonaparte against third-party defendants Ulery. In any realistic sense, the plaintiff and the third-party defendants are adverse to each other.

The lead opinion also states that the defendants alone should absorb any award of costs or attorney fees to the third-party defendants because the defendants filed their third-party complaint as "a matter of convenience, not of necessity." Assuming (solely for the sake of discussion) that the filing was indeed for "convenience"—and that the third-party defendants were not persons required to be joined if feasible under I.R.C.P. 19—the fact remains that the existence of a prescriptive easement is an issue common to both the main action and the third-party action. Where common issues exist, it is plainly reasonable—and "foreseeable" as the trial judge noted—for a defendant to make his third-party claim while the main action is pending. Indeed, a fundamental purpose of I.R.C.P. 14, which authorizes such third-party practice, is to promote judicial efficiency by eliminating circuity of actions or piecemeal litigation. WRIGHT & MILLER § 1442 (discussing counterpart federal rule).

■■■ The lead opinion draws upon the "convenience" hypothesis to conclude that if a defendant engages in such third-party practice, and if he and the third-party defendant later prevail against the plaintiff on an issue common to the main action and the third-party action, the defendant alone should absorb the burden of any costs or

attorney fees awarded to the third-party defendant. If we were to adopt this conclusion it would have an obvious chilling effect on third-party practice and could erode one of the most important advances in modern civil procedure.

Although the lead opinion cites two cases in support of its position, we find neither of them to be persuasive. In *Tejas Development Co. v. McGough Bros.*, 167 F.2d 268 (5th Cir.1948), the appellate court made an ad hoc, equitable decision regarding cost allocation; it did not adopt any discretion-limiting rule of the type suggested by the lead opinion today. In the other case, *Andersen v. Gold Seal Vineyards, Inc.*, 81 Wash.2d 863, 505 P.2d 790 (1973), such a rule was indeed suggested; however, it was supported by no citation of authority and it appears the case has not been cited with approval on that point in any other jurisdiction.

The better approach, which we adopt, is to allow the trial court to determine what issues are common to the main action and third-party action, to determine on a functional basis which parties are adverse to each other on those issues, and—in the exercise of sound discretion—to allocate the costs and attorney fees relating to those issues. In an appropriate case, the trial court may direct that the burden of a prevailing third-party defendant's costs and attorney fees on common issues be borne, in whole or in part, by the nonprevailing plaintiff. The court may accomplish this by making a direct award against the nonprevailing plaintiff or by making an award against the defendant, with a right of reimbursement from the nonprevailing plaintiff. Of course, any such award must be tailored to the third-party defendant's actual and reasonable participation in litigating the common issues.

Nevertheless, in the present case, the award of the third-party defendants' costs and attorney fees directly against the plaintiff must be vacated for two reasons. First, when a court exercises its discretion to allocate costs and attorney fees, it should strive for a just result in light of the relationships among all the parties. Here, the trial court has not yet determined whether the defendants will have any liability for the third-party defendants' fees or costs; and our decision today vacates the award of the defendants' attorney fees against the plaintiff. Secondly, as we have noted, a nonprevailing plaintiff may be required to bear the economic burden of some or all of the third-party defendant's costs or attorney fees—but only in reasonable measure with respect to those issues which are common to the main action and third-party action. Here, the third-party action embraced not only the issue of adverse use giving rise to a prescriptive easement, but also the issues of guaranty and alleged misrepresentation by the third-party defendants. We cannot presume, upon the instant record, that all of the third-party defendants' attorney fees or costs were related solely to the common issue of adverse use.

Accordingly, the allocation of costs and attorney fees should be reexamined on remand. If the trial court determines that any award should be made against the nonprevailing plaintiff, the costs or attorney fees of the third-party defendant may be included only to the extent that they relate to the issue of adverse use.